# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HOUSER, | No. 4:16-CV-01517 |
| Plaintiff, | (Judge Brann) |
| v. | |
| NORFOLK SOUTHERN RAILWAY COMPANY, | |
| Defendant. | |

## ORDER

**JULY 3, 2019**

On May 10, 2016, Robert Houser initiated this action against Norfolk Southern Railway Company.[1] His complaint, brought under the Federal Employers' Liability Act,[2] alleges that he developed medial epicondylitis (*i.e.*, tendinitis in his elbow) while employed by Norfolk Southern, and that his injury was caused by Norfolk Southern's negligence. Before the Court are two motions in limine[3] filed by Norfolk Southern to preclude certain evidence at a jury trial scheduled to begin on July 29, 2019.

---

[1] ECF No. 1.
[2] 45 U.S.C. § 51 *et seq.*
[3] ECF Nos. 57, 59.

## Motion in Limine to Preclude
## Evidence of Future Wage Loss

Mr. Houser has employed a vocational expert and an economic expert. The vocational expert opines that Mr. Houser has no post-injury earning capacity.[4] Based on that opinion, the economics expert opines that Mr. Houser's lost earnings total $422,791.[5] Norfolk Southern believes these opinions are flawed because there is no evidence that Mr. Houser is completely disabled, and therefore moves this Court, pursuant to Federal Rules of Evidence 403 and 702, to preclude Mr. Houser from presenting evidence about future wage loss.[6]

It is true that Mr. Houser's doctor allowed him to return to work in 2014, mentioning only that his epicondylitis would likely flare up in the future. It is also true that, in 2017, the doctor admitted that he had not seen Mr. Houser since 2014 and therefore "d[id] not know if [Mr. Houser] [was] healed or not" and "[could not] make an educated opinion as to his restrictions or disability."[7] The vocational and

---

[4] *See* Expert Report of Terry Leslie (ECF No. 57-1) at 6 ("It is my professional opinion that the combination of Mr. Houser's age, limited education, physical limitations, lack of transferable skills[,] and geographic result in him not having a post-injury earning capacity.").

[5] *See* Expert Report of Jeffrey Willoughby (ECF No. 57-2) at 4.

[6] Mr. Houser filed no brief in opposition to this motion; it is therefore considered unopposed. *See* Local Rule 7.6 ("Any party who fails to [file a brief in opposition to a motion] shall be deemed not to oppose such motion."). That choice is surprising, particularly since more than 50% of the damages sought by Mr. Houser relate to wage loss. *See* Mr. Houser's Pretrial Memorandum (ECF No. 61) § D (noting that he is seeking $422,791 for lost wages and $400,000 for pain and suffering).

[7] April 14, 2017 Letter from Dr. John C. Sefter to Plaintiff's Counsel (ECF No. 57-3).

economics experts, however, rely on more than this doctor's medical diagnoses (or lack thereof). The vocational expert conducted an independent assessment of Mr. Houser's physical condition[8] and further relied on Mr. Houser's "age, limited education, . . . lack of transferable skills[,] and [the] geographic area [in which he lives]" when forming an opinion about Mr. Houser's post-injury earning capacity.[9] And the economics expert simply relied on the vocational expert's opinion to calculate how much Mr. Houser would have earned had he been able to keep working.

This motion, therefore, will be denied.

## Motion in Limine to Preclude the Testimony of Mr. Houser's Ergonomics Expert

Mr. Houser has also employed an ergonomics expert who opines on (1) the presence of certain ergonomic risk factors in Mr. Houser's work for Norfolk Southern;[10] (2) the causal relationship between those risk factors and Mr. Houser's

---

[8] *See* Expert Report of Terry Leslie at 2 ("[Mr. Houser] continues to experience pain in his elbow specifically on the medial side radiating 5"-6" towards his wrist. He has difficulty putting stress on his left arm and if he pumps his arm, he has significant pain.").

[9] *Id.* at 6.

[10] Expert Report of Colin J. Brigham at 4 ("The National Institute for Occupational Safety and Health (NIOSH) stated that "There is strong evidence for a relationship between exposure to a combination of risk factors (e.g., force and repetition, force and posture) and epicondylitis." These risk factors were present throughout Mr. Houser's employment.").

3

epicondylitis;[11] (3) the existence of scientific literature showing the prevalence of medial epicondylitis in the railroad industry and that condition's association with the use of certain tools;[12] and (4) the lack of evidence showing any effort by Norfolk Southern to reduce ergonomic risk in the job Mr. Houser performed for Norfolk Southern.[13] Norfolk Southern argues that these opinions should be excluded, also pursuant to Federal Rules of Evidence 403 and 702.

## Qualifications

Norfolk Southern attacks the ergonomics expert's qualifications. First, Norfolk Southern argues that the expert is not qualified to opine on the presence of certain ergonomic risk factors in Mr. Houser's work for Norfolk Southern because the expert lacks railroad-specific ergonomics experience. This Court disagrees, since the expert has a wealth of experience in the field of ergonomics generally.[14]

Second, Norfolk Southern argues that the ergonomics expert is not qualified to opine on the causal relationship between certain ergonomic risk factors and Mr.

---

[11] *Id.* ("It is more likely than not that the ergonomic risk associated with Mr. Houser's employment with Norfolk Southern Railway System was a significant causative factor in his development of bilateral medial epicondylitis of his elbows.").

[12] *Id.* ("There is documentation in the scientific literature regarding the prevalence of this disorder in the railroad industry, associated primarily with the use of railroad spike mauls and other hand tools.").

[13] *Id.* ("While Norfolk Southern Railway System had documents stating that they continually sought to reduce ergonomic risk, there was no evidence provided that they had done so in the type of work (as part of a bridge gang) performed by Mr. Houser.").

[14] *See* Curriculum Vitae of Colin J. Brigham (ECF No. 59-1) at 2-3 (listing numerous examples of previous work involving ergonomics).

4

Houser's epicondylitis, because the ergonomics expert is not medically trained. This Court agrees,[15] and will exclude that portion of the ergonomics expert's testimony.

The Ergonomics Expert's Opinion
on the Presence of Certain Ergonomic Risk
Factors in Mr. Houser's Work for Northern Southern

Norfolk Southern then attacks the expert's opinion on the presence of certain ergonomic risk factors in Mr. Houser's work for Norfolk Southern. First, Norfolk Southern argues that this opinion should be excluded as lacking a sufficient basis of facts or data, since the expert failed to measure and quantify several aspects of that work, including how often and for how long Mr. Houser performed certain risk-creating activities, and how much force or vibration was involved in specific tasks. These investigative gaps are indeed valid concerns, and may be fertile ground for vigorous cross examination. However, despite Norfolk Southern's protestations, it is not true that the ergonomics expert "failed to perform an analysis of [Mr. Houser's] job."[16] To the contrary, the ergonomics expert has considered Mr. Houser's description of his job duties (which description was given in a deposition[17]

---

Norfolk Southern, in fact, concedes that "[t]o the extent that [the ergonomics expert] intends to testify about risk factors in the workplace, that testimony would be consistent with the background of an ergonomist." Norfolk Southern's Reply Brief at 5.

[15] *See Brenner v. Consolidated Rail Corp.*, 806 F. Supp. 2d 786, 791 (E.D. Pa. 2011) (excluding ergonomic expert's medical causation opinion).

[16] Norfolk Southern's Brief in Support (ECF No. 60) at 17.

[17] *See* Expert Report of Colin J. Brigham at 2 ("In his deposition (pages 69-70 and other[s]), Robert Houser described the work activities he performed that he felt to be physically demanding, leading to his elbow discomfort and eventual disorder.")

and in a personal discussion with the ergonomics expert[18]); has analyzed Mr. Houser's work equipment and how it is used;[19] and has reviewed a job demand form completed by Norfolk Southern that describes some of the physical demands made on someone in Mr. Houser's occupation.[20]

Second, Norfolk Southern argues that this opinion should be excluded because of reliability concerns about the principles and methods used by the expert, and the expert's application of those principles and methods. As with the expert's fact-and-data collection, there are certainly weaknesses with the expert's methodology that are ripe for cross examination, such as concerns about the way the expert utilized a certain risk analysis tool[21] and the expert's reliance on a study that has nothing to do with medial epicondylitis.[22] The ergonomics expert, however, has supported his opinion with a study[23] showing a causal connection between epicondylitis and

---

[18] *Id.* at 3 (noting "a discussion [the ergonomics expert] had with Mr. Houser" about the practices and equipment involved in his job with Norfolk Southern).

[19] *Id.* at 2 (describing the physical attributes of a spike maul and the way that tool is used to drive railroad spikes).

[20] *Id.* at 2 (noting that the form "provides frequency and weight details for a variety of different tasks").

[21] *See* Expert Report of Colin J. Brigham at 3 ("The Moore-Garg Strain Index is [a] scientifically validated ergonomic risk analysis tool . . . I used this tool to evaluate the job performed by Mr. Houser . . . . The overall strain index score was 9.0. Anything >7 is rated hazardous."); Affidavit of Greg G. Weames (ECF No. 66-1; ¶¶ 14, 17 (opining that the ergonomics expert failed to collect the data needed to complete and apply the Strain Index properly).

[22] *See* Expert Report of Colin J. Brigham, Attachment 3 (discussing the "possibility of cumulative trauma *in the form of low back pain or injury*," but not in the form of elbow pain or injury).

[23] *See* Expert Report of Colin J. Brigham, Attachment 2. This NIOSH study finds "strong evidence [showing] a relationship between exposure to a combination of risk factors (e.g. force

certain risk factors, and has considered evidence[24] showing the presence of such risk factors in Mr. Houser's work for Norfolk Southern.[25]

Third, Norfolk Southern argues that this opinion should be excluded under Rule 403, asserting that the probative value of the ergonomics expert's opinion on the presence of some quantity and quality of risk factors in Mr. Houser's work for Norfolk Southern would be substantially outweighed by the prejudice to Norfolk Southern of such testimony, or by the possibility that such testimony will confuse the issues or mislead the jury. This Court, however, is not convinced that a jury would be unable to appreciate the opinion's weaknesses or would be seriously distracted by it.

---

and repetition, force and posture) and epicondylitis." *Id.* at 4-1. Norfolk Southern points out that study's failure to find a relationship between Mr. Houser's elbow condition and "repetitive work," or between Mr. Houser's elbow condition and "postural factors," to argue that the expert should not have relied on it. A study's failure to find a correlation between a medical condition and a *single risk factor in isolation*, however, devalues neither the study's finding of a correlation between a medical condition and *multiple risk factors in combination*, nor the reliability of an expert who relies on that study.

[24] *See supra* notes 17 and 18.

[25] Norfolk Southern also moves to exclude this opinion under Rule 403, asserting that the relevance of the ergonomics expert's assertion of the presence of some unknown quantity and quality of risk factors in Mr. Houser's work for Norfolk Southern is substantially outweighed by the prejudice to Norfolk Southern of such testimony, or by the possibility that such testimony will confuse the issues or mislead the jury.

For all those reasons, and because of the Rules' "strong preference" in favor of admissibility,[26] the ergonomics expert will be allowed to opine on the presence of certain ergonomic risk factors in Mr. Houser's work for Norfolk Southern.

The Ergonomics Expert's Opinion
on the Existence of Scientific Literature Showing
the Prevalence of Medial Epicondylitis in the Railroad Industry

Norfolk Southern argues that the expert's opinion regarding the existence of scientific literature showing the prevalence of medial epicondylitis in the railroad industry should be excluded because of an absolute lack of such literature. This Court agrees. The ergonomics expert cited two studies in his report: the first dealt with medial epicondylitis but did not discuss that condition's association with work in the railroad industry,[27] and the second dealt with work in the railroad industry but did not discuss medial epicondylitis.[28] No other study appears on the face of the ergonomics expert's report, and Mr. Houser fails to point to support for this opinion in any other way. This opinion, therefore, will be excluded.

---

[26] *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) ("The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. . . . Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility.").

[27] *See* Expert Report of Colin J. Brigham, Attachment 2 (discussing the "relationship between *exposure to a combination of risk factors* . . . and epicondylitis) (emphasis added).

[28] *See* Expert Report of Colin J. Brigham, Attachment 3 (discussing the "possibility of cumulative trauma in the form of low back pain or injury" from the use of certain railroad industry hand tools).

### The Ergonomics Expert's Opinion on the Lack of Evidence Showing Any Effort by Norfolk Southern to Reduce Ergonomic Risk in Mr. Houser's Job

Norfolk Southern argues the expert's research into its ergonomic risk-reduction efforts was insufficient, and that this Court should therefore exclude the expert's opinion on this topic.[29] This Court disagrees, since Norfolk Southern itself admits that the expert reviewed more than 3,000 pages of documents on the subject.[30]

**Disposition**

For those reasons, **IT IS HEREBY ORDERED** that:

1. Norfolk Southern's Motion in Limine to Preclude Evidence of Future Wage Loss, ECF No. 57, is **DENIED**.

2. Norfolk Southern's Motion in Limine to Preclude the Expert Testimony of Colin Brigham, ECF No. 59, is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Mr. Brigham **IS PRECLUDED** from testifying that Mr. Houser's epicondylitis was caused by his work for Norfolk Southern.

---

[29] Norfolk Southern also argues, in passing and without further elucidation, that "this opinion does not constitute scientific testimony that will assist the jury." Norfolk Southern's Reply Brief at 17. Because Norfolk Southern has provided virtually no support for, or analysis of, this argument, this Court will not consider it.

[30] Norfolk Southern's Brief in Reply at 7, 18.

b. Mr. Brigham **IS PRECLUDED** from testifying about the existence of scientific literature showing the prevalence of medial epicondylitis in the railroad industry and that condition's association with the use of certain tools.

c. The motion is otherwise **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge